## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF LOUISIANA

_____
|                                              )
SECURITIES AND EXCHANGE COMMISSION,            )
|                                              )
|                                              }
Plaintiff,                                     )        Civil Action No.:
|                                              )
v.                                             )
|                                              )
VERN A. BRELAND,                               )
|                                              )
Defendant.                                     )
_____

## COMPLAINT

Plaintiff United States Securities and Exchange Commission (the "SEC") alleges:

## SUMMARY OF ALLEGATIONS

1.      This Case involves misconduct by Vern A. Breland (the "Defendant" or "Breland"), the former Mayor of the Town of Sterlington, Louisiana (the "Town" or "Sterlington"), in connection with its issuance of municipal bonds in 2017 and 2018.

2.      On April 27, 2017, the Town sold $4 million water and sewer utility revenue bonds ("2017 Bonds"), and on September 28, 2018, it sold a $1.8 million refunding bond (refunding  two 2015 water and sewer utility revenue bonds) ("2018 Bonds") (collectively, the "Bonds").  The Bonds, which were sold in

private placements to investors, were represented as intended to finance the development of a water system for the Town and improvements to its existing sewer system.

3.     As required by Louisiana law, the Town applied to the Louisiana State Bond Commission ("SBC") for its approval of these bond offerings.  Upon Breland's approval of each, the Town's applications for the 2017 Bonds and 2018 Bonds were submitted to the SBC on January 18, 2017, and July 18, 2018, respectively.

4.     In support of each application, the Town submitted false financial projections about the anticipated revenue of the Town's sewer system.  Breland actively participated in and knowingly approved the false projections, which were created by the Town's municipal adviser, Twin Spires Financial, LLC ("Twin Spires") and its owner and sole employee, Aaron Fletcher ("Fletcher"), and misled the SBC as to the Town's ability to cover its debt service for the proposed bonds. Investors in the 2017 Bonds and 2018 Bonds were not informed that the Town had obtained SBC approval of the Bonds based on false projections.

5.     In addition, the Town and Breland did not disclose to investors in the 2017 Bonds and 2018 Bonds that the Town, at Breland's direction, misused over $3 million from earlier bond offerings.

6.      As a result of this conduct, Breland violated Sections 17(a)(1) and

17(a)(3) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. § 77q(a)(1)

and (3)]; Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act")

[15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5]; and,

aided and abetted the Town's violation of Section 17(a)(2) of the Securities Act

[15 U.S.C. § 77q(a)(2)].

### DEFENDANT

7.      **Vern A. Breland**, age 59, is a resident of Columbia, Louisiana.

Breland was elected as the Town's Mayor in 2006 and resigned from office on

October 1, 2018. On August 7, 2020, a Louisiana grand jury charged Breland for

"malfeasance in office (a felony) between the dates of January 1st, 2017 and

including September 30, 2018, willfully and unlawfully perform, refuse or fail to

perform his duty as a public officer, contrary to the provisions of R.S. 14:134."

The charge is based on the Town's misuse of bond proceeds directed by Breland

and the case is still pending.

### OTHER RELEVANT INDIVIDUAL AND ENTITIES

8.      **Sterlington, Louisiana** is a town with a current population of

approximately 2,600 citizens located in the central northeastern part of the State of

Louisiana.  It is governed by an elected mayor and a five member board of aldermen.

9.     **Aaron B. Fletcher** is a resident of Frisco, TX.  He wholly owns Twin Spires and is its sole employee and director.

10.     **Twin Spires Financial LLC** is a Texas company formed in July 2015, with its principal place of business in Frisco, TX.  During the relevant period, Twin Spires conducted business as a municipal advisor but was not registered with the Commission.

## JURISDICTION AND VENUE

11.     The SEC brings this action pursuant to authority conferred upon it by Sections 20(b) and 20(d) of the Securities Act [15 U.S.C. §§ 77t(b) and 77t(d)] and Sections 21(d) and 21(e) of the Exchange Act [15 U.S.C. §§ 78u(d) and 78(u)(e)].

12.     This Court has jurisdiction over this action pursuant to Section 22(a) of the Securities Act [15 U.S.C. § 77v(a)] and Sections 21(d), 21(e), and 27 of the Exchange Act [15 U.S.C. §§ 78u(d), 78u(e), and 78aa].

13.     Venue is proper in this District, because Sterlington is located within this District and the acts constituting violations of the federal securities laws alleged in this Complaint occurred within this District.

14.     In connection with the conduct described in this Complaint, Defendant directly or indirectly made use of the mails, the means and instrumentalities of interstate commerce, or the means or instruments of transportation or communication in interstate commerce.

## FACTUAL ALLEGATIONS

### Sterlington Issued 2017 and 2018 Municipal Bonds to Finance
### Its Sewer and Water Projects

15.    Beginning in or about 2015, Breland and the Town began municipal projects to upgrade the Town's existing sewer system, purchase the water distribution system for its residents from a third-party entity (which owned and operated it since 1965), and build a water treatment facility.

16.    To fund these projects, Breland and the Town decided to pursue municipal bond offerings to raise the necessary funds.  In June 2015, Breland executed a financial advisory agreement between the Town and Twin Spires pursuant to which Twin Spires agreed to provide, among other municipal advisory services for the Town, advice on various forms of debt financing.

17.    In April 2017, the Town sold the 2017 Bonds ($4 million Utility Revenue Bonds, which included $3.5 million Utility Revenue Bonds, Series 2017A (Tax Exempt) and $500,000 Taxable Utility Revenue Bonds, Series 2017B).  In September 2018, the Town sold the 2018 Bonds ($1.845 million of Wastewater, Water and Sewer Treatment Utilities Revenue Bonds, Series 2018).

### Overstatement of Sewer Customer and Revenue Projections
### In Application to SBC

18.    Prior to issuing municipal bonds or incurring any form of debt, Sterlington was required, by the Louisiana Constitution and state law, to obtain

approval of the SBC.  As part of the approval process, the SBC requires the applicant to demonstrate that the debt service coverage ratio ("DSCR") for all its outstanding debt (including the proposed debt incurrence) would be at least 1.0 in the year of the highest annual future debt service payment based on projected net income for the next full year subsequent to submission of the application.  DSCR is a ratio of net operating income to debt service obligations.

19.    In both 2017 and 2018, the Town submitted an application to the SBC supported by, among other items, sewer and water system revenue and expense projections for the next full year, and expected aggregate debt service payments for all outstanding debt secured by sewer and water system revenues (including the proposed bond issuance), which were utilized to calculate the Town's DSCR.

20.    The financial projections provided to the SBC included detailed estimates of the Town's revenue and operating expenses for the both the sewer and water systems on an annual basis, and annual expected debt service payments for all the Town's outstanding debt, including the proposed offering.  The projections included two prior fiscal years and the current fiscal year of the SBC application and each fiscal year thereafter through the maturity dates of outstanding debt and the proposed offering.

21.    The financial projections were prepared by Twin Spires, Fletcher and Breland, and submitted by the Town to the SBC for approval of the 2017 Bonds.

The projections were false and misleading.  The projections included an intentionally overstated sewer revenue projection for 2018.  The overstated sewer revenue projection allowed Sterlington to falsely exceed a DSCR of 1.0 and obtain SBC approval for the proposed 2017 Bonds.

22.    Breland and Fletcher fraudulently projected that the Town would have 2,040 sewer customers in 2018 (and sewer system revenue of $864,693). Breland and Fletcher were aware that the customer projection was more than double Sterlington's then-actual sewer customer number of 960 in 2016 (a 113% increase).

23.    Breland and Fletcher plugged the 2,040 projected 2018 sewer customer number to reach the sewer revenue required to meet a DSCR of 1.0.  As a result of the overstated projected customer number, the Town's application falsely showed a projected DSCR of 1.02.  Fletcher and Breland had no reasonable basis or support for the projection.

24.    Breland and Fletcher also took steps to mask the false 2018 projection.  They increased the purported number of current sewer customers for 2016 (which were presented to SBC as actual amounts provided for historical purposes) and 2017, in an attempt to smooth out the year-to-year trend of sewer customers so that Fletcher's extremely high 2018 sewer customer projection would appear more realistic.  For example, Fletcher's financial projections in the SBC

application represented that the Town had 1,574 sewer customers for 2016.  The

Town's December 2016 sewer records (the last full month prior to SBC application

date of January 2017) showed that the Town actually billed only 960 sewer

customers.

25.     Breland and Fletcher were aware of the actual historical sewer

customer numbers because the Town's sewer clerk repeatedly provided them with

the actual number of customers and provided them with reports showing the

accurate number of customers.  Breland nevertheless participated in, reviewed and

approved Fletcher's projections.

26.     On February 16, 2017, the SBC approved the Town's 2017 bond

offering.  The SBC relies on the municipal issuer and its professionals to provide

accurate and complete information.  The SBC was not aware that the DSCR was

based on false and misleading projections and as such, it would not have approved

the issuance of the 2017 Bonds.

27.     In a private placement on April 27, 2017, the Town sold the 2017

Bonds to two banks and a state lending authority.  The total issuance was $4

million.

28.     On July 18, 2018, the Town submitted another SBC application based

on similar projections for approval of the 2018 Bonds ($1.8 million Wastewater,

Water and Sewer Treatment Utilities Revenue Bonds) to refund a 2015 bond

issuance. The 2015 Bonds that were to be refunded were Series A and B, Water

Treatment and Utilities Revenue Bond ($500,000) and Wastewater and Sewer

Treatment Utilities Revenue Bond ($1.2M) ("2015 Bonds").

29.    The SBC application for the 2018 Bonds was initially prepared by

Twin Spires and Fletcher.  As with the 2017 application, the 2018 application was

reviewed and approved by Breland.  Breland was aware that the 2018 application

also included an overstated sewer system revenue projection similar to the

application for the 2017 Bonds.  It fraudulently projected, among other items, that

Sterlington would have 2,204 sewer customers for 2019 (now the relevant year for

the DSCR calculation).  This amount, without any support or justification for the

increase, was significantly higher than the Town's 1,076 actual sewer customers as

of June 30, 2018.

30.    The false and misleading projection caused the Town to overstate its

2019 projected sewer system revenue by approximately $300,000.  The false

projection resulted in a DSCR of 1.1, over the 1.0 necessary for SBC approval.

Without the overstated sewer revenue, the DSCR would have been well below 1.0,

and the bond issuance would not have received the necessary SBC approval.

31.    On August 16, 2018, the SBC approved the bond offering.  On

September 28, 2018, the Town privately placed the 2018 Bonds with a single bank

investor.

**Defendant and Sterlington Did Not Disclose that the SBC Approvals Were**
**Based on Fraudulently Overstated Sewer Revenue Projections**

32.     In connection with the sale of the 2017 Bonds and the 2018 Bonds,
each of the investors were informed that Sterlington had, as required by law,
obtained SBC approval prior to issuing the Bonds.

33.     As part of their process for soliciting investors to purchase the 2017
Bonds, Breland, through Fletcher, sent one of the 2017 Bond investors a copy of
the SBC application, which had been submitted by the Town for the 2017 Bonds.

34.     In connection with soliciting investor interest in the 2018 Bonds,
Breland, through Fletcher, sent the 2018 Bond investor a copy of the 2018 Bond
SBC application and affirmatively told the 2018 Bond investor in an email that the
"refunding was approved by Bond Commission."

35.     In addition, at the closings for both offerings, the Town provided each
investor with a copy of the SBC approval certificate, representing that the SBC had
approved the Bonds.  For the 2017 Bonds, Breland also provided a certification
that the Bonds were "authorized by and issued in conformity with the requirements
of the Constitution and statutes of the State of Louisiana."

36.     These communications and representations to investors about SBC
application and SBC approval were misleading because investors were not
informed that the SBC applications contained false information and that the SBC

approvals had been obtained based on fraudulently overstated sewer revenue projections.

37.     Breland was aware at all relevant times that SBC's approval was based on false financial projections.

### Defendant and Sterlington Failed to Disclose Misuse of Proceeds From Previous Bond Issuances

38.     Louisiana state law provides that bond proceeds constitute a trust fund to be used exclusively for the purpose for which the bonds are authorized to be issued. Use of bond proceeds for unauthorized purposes is a violation of state law.

39.     At Breland's direction, the Town used some of the proceeds from a 2015 bond offering for purposes different from the purposes for which the bonds were authorized.   This misuse was not disclosed to investors in the 2017 and 2018 Bonds.   Similarly, Breland also directed the Town's misuse of proceeds from the 2017 Bonds without disclosing this misuse to the 2018 Bond investor.

40.     In 2015, Sterlington issued $500,000 of water treatment and utilities revenue bonds and $1.2 million of wastewater and utilities bonds (the "2015 Bonds").

41.     Pursuant to the bond ordinance for the $500,000 bond, the proceeds were to be solely used for the purpose of acquiring, constructing and installing a new water treatment facility with infrastructure improvements, extensions,

modifications and additions to the wastewater and sewer treatment system of
Sterlington.

42.     The bond ordinance for the $1.2 million bonds stated that the purpose
for the bond proceeds was for acquiring, constructing and installing improvements,
extensions and additions to the wastewater and sewer treatment system.

43.     Between January 2016 and August 2017, Breland directed Town
employees to spend approximately $432,000 of the 2015 Bond proceeds on
expenditures that were contrary to the bond ordinances and other investor
disclosures for those bond proceeds.  These improper expenditures included over
$65,000 on police cars and $205,000 on Sterlington's payroll.

44.     Sterlington's audited financial statements for the year ended
December 31, 2016, included a finding that Sterlington improperly spent $322,280
of the 2015 Bond proceeds.  In or about July 2017, the Town's auditor notified the
Town of this finding.

45.     On August 29, 2017, Breland's response to the finding, on behalf of
the Town, was that the Town planned to repay all the funds by December 31, 2017.

46.      Sterlington's records show that only $39,800 was repaid by the end
of 2017 and the remaining $282,480 was never repaid.

47.     From January 1, 2017 through August 29, 2017, Breland directed the
misuse of an additional $110,367 from the 2015 Bond proceeds.  As a result,

Sterlington spent a total of $432,647 on items inconsistent with the stated purposes for the 2015 Bonds.

48.     Prior to, and after Sterlington's response to the audit finding, Sterlington, at Breland's direction, also used the proceeds of the 2017 Bonds contrary to the stated purpose in the bond ordinance and other investor disclosures. The stated purpose of the 2017 Bonds was to  "[construct] and [acquire] utility improvements, extensions and replacements to the System, including utility improvements to the Issuer's new sports complex and other municipality owned projects, including appurtenant equipment, accessories and additions to such works of public improvement for the Issuer…."

49.     Between June 16, 2017 and September 10, 2018, Sterlington, at Breland's direction, spent $2,685,456 of the 2017 Bond proceeds, including $2,176,506 on projects related to its sports complex that had nothing to do with the sewer or water system, and $362,184 on legal fees.  These uses were inconsistent with the stated purposes for the 2017 Bonds.

50.     In documents provided to investors in both the 2017 and 2018 Bonds, the Town and Breland made statements as to the intended use of bond proceeds. The Town and Breland failed to disclose their prior and ongoing practice of using bond proceeds in a manner inconsistent with the use disclosed to investors.

13

51.     The Bonds were revenue bonds, intended to improve revenue producing water and sewer systems.  The revenues from these systems were described as the source of repayment for the Bonds.  The Town's prior practice of misusing proceeds presented a risk that the Town would misuse proceeds in the 2017 and 2018 Bonds.  The use of proceeds for non-Bond purposes presented a risk to the successful completion and operation of the projects and a risk to repayment.

## FIRST CLAIM FOR RELIEF

### Fraud in the Offer or Sale of Securities
### Section 17(a)(1) of the Securities Act

The SEC incorporates the allegations in paragraphs 1 through 51 as if fully set forth herein.

52.     By engaging in the acts and conduct alleged herein, Defendant, directly or indirectly, in the offer or sale of securities, by the use of any means or instruments of transportation or communication in interstate commerce or by use of the mails, has knowingly or with severe recklessness employed a device, scheme, or artifice to defraud.

53.     By the reason of the foregoing, Defendant violated and, unless restrained and enjoined, will continue to violate Section 17(a)(1) of the Securities Act [15 U.S.C. § 77q(a)(1)].

## SECOND CLAIM FOR RELIEF

### Fraud in the Offer or Sale of Securities
### Section 17(a)(3) of the Securities Act

The SEC incorporates the allegations in paragraphs 1 through 51 as if fully set forth herein.

54.    By engaging in the acts and conduct alleged herein, Defendant, directly or indirectly, in the offer or sale of securities, by the use of any means or instruments of transportation or communication in interstate commerce or by use of the mails, has knowingly, recklessly, or negligently engaged in a transaction, practice, or course of business which operated or would operate as a fraud or deceit upon the purchaser.

55.    By the reason of the foregoing, Defendant violated and, unless restrained and enjoined, will continue to violate Section 17(a)(3) of the Securities Act [15 U.S.C. § 77q(a)(3)].

## THIRD CLAIM FOR RELIEF

### Fraud in Connection with the Purchase or Sale of Securities
### Section 10(b) of the Exchange Act and Rule 10b-5 thereunder

56    The SEC incorporates the allegations in paragraphs 1 through 51 as if fully set forth herein.

57.    By engaging in the acts and conduct alleged herein, Defendant, directly or indirectly, in connection with the purchase or sale of securities, by the use of any

means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange:

      a.    employed a device, scheme, or artifice to defraud;

      b.    made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and,

      c.    engaged in an act, practice, or course of business which operated or would operate as a fraud or deceit upon any person.

58.    Defendant knowingly, intentionally, and/or recklessly engaged in the aforementioned devices, schemes and artifices to defraud, made untrue statements of material facts and omitted to state material facts, and engaged in fraudulent acts, practices and courses of business.  In engaging in such conduct, Defendant acted with scienter, that is, with an intent to deceive, manipulate or defraud or with a severe reckless disregard for the truth.

59.    By reason of the foregoing, Defendant violated and, unless restrained and enjoined, will continue to violate Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

## FOURTH CLAIM FOR RELIEF

### Aiding and Abetting Liability against Breland for
### Sterlington's Violation of Section 17(a)(2) of the Securities Act

60.     The SEC incorporates the allegations in paragraphs 1 through 51 as if fully set forth herein.

61.     By the above described conduct, Sterlington, in the offer and sale of securities described herein, by use of means and instruments of transportation and communication in interstate commerce and by use of the mails, directly and indirectly, obtained money and property by means of untrue statements of material fact and omissions to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

62.     By reason of the foregoing, Sterlington violated Section 17(a)(2) of the Securities Act.

63.     Breland was aware of, or recklessly disregarded, that Sterlington's conduct was improper and rendered Sterlington substantial assistance in this conduct.

64.     By reason of the foregoing, Breland aided and abetted and, unless enjoined will continue to aid and abet, violations of Section 17(a)(2) of the Securities Act [15 U.S.C. § 77q(a)(2)].

## **RELIEF REQUESTED**

WHEREFORE, the SEC respectfully requests that this Court enter a judgment:

### I.

Permanently enjoining, pursuant to Rule 65(d) of the Federal Rules of Civil Procedure, the Defendant from violating, directly or indirectly, Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)] and Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

### II.

Ordering Defendant to pay a civil penalty pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)].

### III.

Permanently restraining and enjoining Defendant from directly, or indirectly, (i) participating in any issuance, purchase, offer, or sale of municipal securities, including but not limited to engaging or communicating with a broker, dealer, municipal securities dealer, municipal advisor, bond insurer, nationally recognized statistical rating organization, investor, issuer or obligated person for purposes of issuing, purchasing, offering, or selling any municipal security; and (ii) participating in the preparation of any materials or information which Defendant should

reasonably expect to be submitted to the Municipal Securities Rulemaking Board's Electronic Municipal Market Access system in connection with an offering or a continuing disclosure obligation, or which Defendant should reasonably expect to be provided to investors in connection with any offering (including a private placement) of municipal securities, provided however, that such injunction shall not prevent Defendant from purchasing or selling municipal securities for his own personal account.

## IV.

Ordering Defendant to provide a copy of the judgment by email or mail within 10 days of the entry of the judgment to any issuer of municipal securities or obligated person with which Defendant is employed as of the date of the entry of the judgment.

## V.

Retaining jurisdiction over this action to implement and carry out the terms of all orders and decrees that may be entered, or to entertain any suitable application or motion for additional relief within the jurisdiction of this Court.

VI.

Granting such other and further relief as this Court deems just and appropriate.

Dated:  June 2, 2022.

Respectfully submitted,

/s/William P. Hicks
William P. Hicks
Senior Trial Counsel
Georgia Bar No. 351649
hicksw@sec.gov


M. Graham Loomis
Regional Trial Counsel
Georgia Bar No. 457868
loomism@sec.gov


United States Securities and Exchange Commission
950 E. Paces Ferry Road NE
Suite 900
Atlanta, GA 30326
404-842-7600